E-FILED
Wednesday, 23 October, 2024  05:58:51 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| NICHELLE DREW, BRADLEY DREW, and KALEB DREW, a Disabled Adult, by NICHELLE DREW and BRADLEY DREW, Co-Guardians of KALEB DREW, <br><br> Plaintiffs, <br><br> vs. <br><br> BOARD OF EDUCATION OF VILLA GROVE COMMUNITY SCHOOL DISTRICT #302, JENNIFER KNIERIM, SARA JONES, and SONDRA BURWELL, <br><br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. |

## COMPLAINT-- JURY DEMAND

NOW COME Plaintiffs NICHELLE DREW, BRADLEY DREW, and KALEB DREW, by NICHELLE DREW and BRADLEY DREW, Co-Guardians of KALEB DREW, by their attorneys, DODSON, PIRAINO & ASSOCIATES, and complaining of Defendants BOARD OF EDUCATION OF VILLA GROVE COMMUNITY SCHOOL DISTRIDT #302, JENNIFER KNIERIM, in her individual and official capacities, SARA JONES, in her individual and official capacities, and SONDRA BURWELL, in her individual and official capacities, allege as follows:

## I.   NATURE OF THE CASE

1.      This action arises under the United States Constitution, particularly under the provisions of the Eighth and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code § 1983, the Americans with Disabilities Act, the Rehabilitation Act of 1973, seeking damages against Defendants for committing acts, under color of law, with the intent and for

1

the purpose of depriving the Plaintiffs of rights secured under the Constitution and the laws of the United States.

## II. JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments to the United States Constitution. The Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1343. This Court also has supplemental jurisdiction to hear the state claims that will be set forth in this complaint pursuant to 28 U.S.C. § 1367(a).

## III.   VENUE

3.      This action properly lies in the Central District of Illinois, Urbana Division pursuant to 28 U.S.C. § 1391(b) because all parties reside in this judicial district and all claims arose in this judicial district.

## IV.   PARTIES

4.      At all relevant times, Plaintiff Nichelle Drew (hereafter "Nichelle") was a resident of the City of Villa Grove, Douglas County, State of Illinois.

5.      That at all relevant times, Plaintiff Bradley Drew (hereafter "Bradley") was a resident of the City of Villa Grove, Douglas County, State of Illinois.

6.      That Plaintiff Kaleb Drew (hereafter "Kaleb") is the son of Plaintiffs Nichelle Drew and Bradley Drew and at all relevant times Kaleb Drew was a resident of the City of Villa Grove, Douglas, County, Illinois.

7.      Kaleb Drew is 21 years of age and has been diagnosed with autism that significantly impairs Kaleb's daily life and autism is a "disability" within the meaning of the Individuals with Disabilities Education Act ("IDEA"), 20 USC § 1402(3)(A) and 34 CFR §300.8

8.      Kaleb is a "qualified individual with a disability" within the meaning of § 504

2

of the Rehabilitation Act, 29 USC § 705(20), the Americans with Disabilities Act ("ADA"), 42 USC §12131(2) and 28 CFR § 35.104.

9.      Plaintiffs Nichelle Drew and Bradley Drew are the guardians of the person and estate of Kaleb Drew pursuant to an Order Appointing Plenary Guardians that was entered in the Circuit Court Of Douglas County, Illinois on February 6, 2024.

10.     At all relevant times, Kaleb was a student enrolled at Defendant Villa Grove Community School District #302 ("the District") which is a public school district and the District was Kaleb's resident district and serving district pursuant to Kaleb's Individual Education Plan that was in effect for the 2023-2024 school year.

11.     At all relevant times the District had knowledge of Kaleb's disability and Kaleb has received special education services throughout his attendance at schools in the District.

12.     Villa Grove High School is a school within the District and for the 2023-2024 school year Villa Grove High School was Kaleb's home school pursuant to Kaleb's Individual Education Plan, but Kaleb attended L.I.F.E. Academy in Mattoon, Illinois and L.I.F.E. Academy was Kaleb's serving school for the 2023-2024 school year.

13.     The District is a public entity as defined by the ADA, (43 USC § 12131(1) and 28 CFR § 35.104).  The District has the responsibility to provide Kaleb with full and equal access to a free and appropriate public education in compliance with federal and Illinois laws and regulations, including those pertaining to the use of physical discipline or physical force on Kaleb.

14.     The District is the governmental body responsible for the operation of the District's schools, including Villa Grove High School and is responsible for the training and supervision of all of its faculty and staff.

15. The District is located in and carries out its functions in the State of Illinois.

16. Defendant Jennifer Knierim ("Knierim") was employed by the District as a school bus drive during the 2023-2024 school year until the termination of her employment by the District in December, 2023.

17. Defendant Sara Jones ("Jones") is, and at all times relevant, was employed by the District and holds the position of Principal of Villa Grove High School and Junior High.

18. Defendant Sondra Burwell ("Burwell") is, and at all times relevant, was employed by the District and holds the position of Special Education/MTSS Coordinator.

19. That at the time of the incidents alleged in this Complaint, Defendant Knierim was employed by the District and at all times material Knierim was acting in the scope of her employment under color of state law.

20. That at the time of the incidents alleged in this Complaint, Defendant Jones was employed by the District and at all times material Jones was acting in the scope of her employment under color of state law.

21. That at the time of the incidents alleged in this Complaint, Defendant Burwell was employed by the District and at all times material Burwell was acting in the scope of her employment under color of state law.

## V. DEFENDANTS' MISCONDUCT

22. Due to Kaleb's autism, he is unable to effectively communicate with others, he has poor adaptive skills, he does not tolerate change, and deviations in his routine can cause Kaleb to flap his hands and become agitated or violent.

23. That at all relevant times, Jones and Burwell were aware of Kaleb's poor adaptive skills, his inability to tolerate change or deviations in his routine, the potential for

4

Kaleb to become agitated or violent if there is a change or deviation in his routine, and his tendency to be impulsive when angered or frustrated.

24.    Beginning with the commencement of the 2023-2024 school year, the District provided transportation for Kaleb by school bus in order to transport Kaleb from Villa Grove, Illinois, to the L.I.F.E. Academy in Mattoon, Illinois.

25.    The school bus used to transport Kaleb to and from the L.I.F.E. Academy was owned and operated by the District and was driven by Defendant Knierim.

26.    That Knierim lacked the qualifications, training, or ability to be able address Kaleb's disability while also operating a school bus on behalf of the district.

27.    That although Jones, Burwell, and others in the District were well aware of that Kaleb does not tolerate change and that any change or deviation in Kaleb's routine can cause him to become agitated or even violent, neither Jones, Burwell, nor any other employee of the District provided any training or instruction to Knierim on how to safely and property address Kaleb's autism.

28.    Jones, Burwell, and others in the District were also well aware that music had a calming influence on Kaleb and greatly decreased Kaleb's agitation.

29.    That in the fall of 2023, Kaleb began to express to his parents that he did not want to ride the bus that was driven by Knierim to or from the L.I.F.E. Academy and Kaleb began to express to his parents that he was scared of riding the bus driven by Knierim and that he wanted his seat on the bus back.

30.    That unbeknownst to Nichelle Drew and Bradley Drew, in the fall of 2023 Knierim engaged in a course of conduct while transporting Kaleb to and from the L.I.F.E. Academy that was intended to cause Kaleb to become agitated, upset, and violent and did not

serve any legitimate purpose.

31.    That the conduct by Knierim included refusing to play music on the bus while Kaleb was riding on the bus in retaliation for Kaleb not saying good morning to Knierim when Kaleb got on the bus, despite the fact that playing music for Kaleb was a well-known and established method used throughout Kaleb's education in the District to calm Kaleb when he was agitated and to keep him calm.

32.    That the conduct by Knierim also included changing Kaleb's seat on the bus for no reason despite the fact that Kaleb does not tolerate change and any change in Kaleb's routine can cause him to become agitated or even violent.

33.    That on the morning of October 20, 2023, Knierim refused to turn the bus radio on and play music for Kaleb because Kaleb did not say good morning to Knierim when Kaleb got on the bus.

34.    That on the morning of October 20, 2023, after Kaleb got onto the bus that Knierim was driving, Kaleb repeatedly asked Knierim to turn on the radio but Knierim refused to do so.

35.    That when the bus stopped to pick up another student, Knierim walked toward the back of the bus to where Kaleb was sitting, bent over and put her face in close proximity to Kaleb's face despite the fact that Kaleb had not been disruptive since entering the bus and had done nothing other than ask Knierim to turn the bus radio on.

36.    This was done by Knierim with the intent of agitating and provoking Kaleb.

37.    After Knierim bent over and put her face in close proximity to Kaleb's face Kaleb began hitting Knierim.

38.    After Kaleb hit Knierim, Knierim returned to the driver's seat of the bus and

drove the bus back to the business owned by Bradley and Nichelle Drew where Knierim met Bradley Drew and Kaleb exited the bus.

39.    That as Kaleb exited the bus, Knierim falsely stated to Bradley Drew that the radio had been on while Kaleb was on the bus.

40.    That on the morning October 23, 2023, a District school bus being driven by Knierim picked Kaleb up at the business owned by Bradley and Nichelle Drew to transport Kaleb to the L.I.F.E. Academy in Mattoon.

41.    That upon entering the bus on the morning of October 23, 2023, Knierim forced Kaleb to sit in a seat on the bus that was different than Kaleb's regular seat even though requiring Kaleb to change seats is the kind of change in routine that can trigger Kaleb to become agitated or even violent and Knierim further refused to turn the bus radio on.

42.    That due to Knierim requiring Kaleb to sit in a different seat on the bus rather than his normal seat and refusing to play music on the bus radio, Kaleb became agitated and Kaleb began using his backpack to hit an aide that was on the bus with Knierim.

43.    Knierim then returned the bus to the business owned by Bradley and Nichelle Drew where Kaleb got off the bus.

44.    That after Kaleb exited the bus, Knierim told the aide on the bus that she wanted to brake check Kaleb.

45.    That a brake check is when the driver of a vehicle suddenly and without warning applies the brakes for the sole purpose of causing a passenger in the vehicle to lurch forward or fall forward and safe operation of the vehicle and the road conditions do not otherwise require the driver to suddenly apply the brakes.

## VI. NOVEMBER 1, 2023 INCIDENTS

46.    That on or about October 23, 2024, Jones called Plaintiff Nichelle Drew and told Nichelle that Kaleb needed to be punished for his behavior on the bus and that Kaleb was not allowed to ride the bus to L.I.F.E. Academy for two days.

47.    During this telephone conversation with Nichelle Drew, Jones told Nichelle that Jones would look at the video recordings that were made from on board the bus that was operated by Knierim to see if there was anything that was happening on the bus that was agitating, provoking, or triggering Kaleb while on the bus.

48.    That Jones further told Nichelle that Jones and her team would "get to the bottom of this."

49.    That Nichelle also talked to Burwell about Kaleb not wanting to ride the bus to and from L.I.F.E. Academy and Burwell told Nichelle that she would review the video recordings from on board the bus to determine if there was something that was happening on the bus to agitate, trigger, provoke, or trigger Kaleb while on the bus.

50.    That both Jones and Burwell were aware that changes in routine, such as forcing Kaleb to change seats on the bus and refusing to play music on the bus, were triggers that could result in Kaleb becoming agitated, angry or even violent and it should have been obvious to Jones and Burwell upon review of the on board video recordings from the bus that was driven by Knierim that Knierim that doing multiple things to agitate, trigger, and provoke Kaleb including but not limited to requiring Kaleb to change seats, refusing to play music on the bus and getting in Kaleb's face when there was no legitimate disciplinary reason for Knierim to do so.

51.    That it should have been obvious to Jones and Burwell had they reviewed the

on board video recordings from the bus that was driven by Knierim on October 23, 2023 that Knierim intended to "brake check" Kaleb once Kaleb was allowed to return to the bus.

52.     That despite on board video recordings from the bus that was driven by Knierim showing obvious actions by Knierim that Jones and Burwell knew to be triggers for Kaleb to become agitated, upset, or even violent and despite the recording from October 23, 2023 in which Knierim stated she wanted to brake check Kaleb, both Jones and Burwell reported to Nichelle that they could not find anything from the on board video recordings from Knierim's bus that would be agitating or provoking Kaleb.

53.     That at all relevant times, both Jones and Burwell knew that "brake checking" any student that was being transported on a bus that was owned and operated by the District was unsafe and that "brake checking" was not to be used as a means to discipline any students riding on a school bus that was owned and operated by the District, much less a disables student such as Kaleb.

54.     That on October 26, 2023, when Kaleb was permitted by the District to resume riding the bus, Kaleb would not get on the bus and reported to Nichelle that he was scared of the bus and that he wanted his seat back.

55.     On that same date, Knierim falsely told Nichelle that Kaleb's assigned seat on the bus had never been changed.

56.     On November 1, 2023, Kaleb got on a District bus being driven by Knierim at the business owned by Bradley and Nichelle so that Knierim could transport Kaleb and other students of the District to L.I.F.E. Academy in Mattoon, Illinois.

57.     Soon after getting on the school bus, Kaleb reported to Knierim and the aide on the bus that he was not feeling well and wanted to go home.

58.     That after Kaleb repeatedly stated, "take me home" and again stating that he was not feeling well, Knierim stated, "I don't care, he is going to get a brake check."

59.     Kaleb then got out of his seat while the bus was moving and continued to ask Knierim to take him home and continued to state that he was not feeling well and in response Knierim stated that "he is going to get a brake check."

60.     After Kaleb continued to ask Knierim to take him home and to turn around, Knierim then performed a "bake check" while the bus was travelling at approximately 40 miles per hour and Kaleb was standing in the aisle of the bus and unseated.

61.     As a result of the "brake check" by Knierim, Kaleb lurched toward the front of the bus within the aisle of the bus.

62.     That Kaleb became agitated and distraught as a result of the "brake check" by Knierim.

63.     That after the "brake check", Kaleb continued to stand in the aisle of the bus, continued to ask Knierim to turn around, and continued to state that he was not feeling well and in response Knierim told Kaleb that she was going to slam on the brakes of the bus and that Kaleb would fall.

64.     That when Kaleb did not sit down after Knierim's threatened to slam on the brake, Knierim performed another "brake check" while the bus was travelling at 58 miles per hour that caused Kaleb to fall to the floor of the bus.

65.     After Kaleb got up off the floor of the bus, Knierim then told Kaleb that if he did not sit down, she was going to do it [brake check] again.

66.     Due to the repeated "brake checks" by Knierim, Kaleb became even more irritated and angry.

67. While standing in the aisle of the bus, Kaleb continued to tell Knierim that he was not feeling well and stated, "turn me around."

68. Kaleb then threw his backpack at the aide who was seated on the bus and began hitting the aide with his backpack.

69. Knierim again performed a "brake check" while Kaleb was standing in the aisle of the bus and this time Kaleb was thrown forward several feet as a result of the "brake check" performed by Knierim and Kaleb struck a vertical pole at the front of the bus near where Knierim was seated.

70. As a result of this "brake check" Kaleb became even more agitated and angry and began hitting Knierim with his backpack and hitting her with his hand.

71. The aide was subsequently able to stop Kaleb from hitting Knierim and Knierim pulled the bus over to the side of road, got out of the driver's seat, and began pushing Kaleb.

72. Kaleb became more agitated and angered as a result of Knierim pushing him and Kaleb acted like he was going to bite Knierim.

73. Knierim then placed her hands around Kaleb's neck and a struggle ensued in which Kaleb hit Knierim, and Kaleb again acted like he was going to bite Knierim while Knierim held onto Kaleb's arms.

74. That the physical restraint by Knierim and the struggle between Kaleb and Knierim ended when the aide on the bus was able to call Nichelle and Kaleb was able to speak to his mother using the aide's cellular telephone.

## COUNT I
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

1.      Plaintiffs incorporate Paragraphs 1 through 74 as if fully set forth herein.

2.      This claim is brought against the District pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. ("Section 504") and its implementing regulations, 34 C.F.R. § 104 et seq.

3.      Kaleb Drew's medical condition substantially limits one or more major life activities, and he is an "individual with a disability" as defined by 29 U.S.C. § 705.

4.      The District receives federal financial assistance.

5.      The District operates a "program or activity" as defined by 29 U.S.C. § 794(b); namely, the provision of educational services.

6.      The District discriminated against Kaleb Drew because of his disability in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 et seq.

7.      Specifically, the District allowed the improper use of "brake checks" as a form of discipline by Knierim on the District bus that it operated to transport Kaleb to and from the L.I.F.E. Academy in Mattoon, Illinois which caused Kaleb to react impulsively and angrily resulting in his removal from the District bus that was operated by Knierim thereby depriving Kaleb of the opportunity to attend school and participate in the District's programs or activities, namely attendance at the L.I.F.E. Academy, and subjected him to a hostile educational environment.

8.      The District further allowed Knierim to change Kaleb's assigned seat on the bus and deny Kaleb's requests to listen to music on the bus, even though Jones, Burwell, and others in the District were well aware that changes in routine could cause Kaleb to become agitated,

12

angry, or even violent and accommodations such as keeping Kaleb in the same seat and allowing Kaleb to listen to music were well established procedures employed by the District throughout Kaleb's education in the District to accommodate Kaleb's disability.

9. The District knowingly and intentionally subjected Kaleb to discrimination under a program or activity which receives Federal financial assistance in violation of 34 C.F.R. § 104(a).

10. That the District created a hostile educational environment and discriminated against Kaleb because of his disability, by subjecting him to "brake checks" and other arbitrary conditions that were placed him on while he was on the bus provided by the District to transport him to the education and training at the L.I.F.E. Academy.

11. Non-disabled persons within the District were not subjected by the District to "brake checks" or other arbitrary conditions while they were being transported by the District to and from the schools where they receive their education or training within the District and Kaleb was subjected to "brake checks" and other arbitrary conditions while riding the District buses solely because of his disability.

12. The District intentionally or with deliberate indifference failed to provide meaningful access and/or reasonable accommodation to Kaleb so that he could ride the bus to L.I.F.E Academy where he received his education and training though the District.

**COUNT II**
**VIOLATION OF AMERICANS WITH DISABILITIES ACT**

13. Plaintiffs incorporate paragraphs 1 through 74 as if fully set forth herein.

14. This claim is brought against the District pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations, 28 C.F.R. Part 35.

13

15.     The District is a "public entity" as defined by 42 U.S.C. § 12131(1).

16.     Kaleb Drew is a "qualified individual with a disability" as defined by 42 U.S.C. § 12131(2).

17.     Because of Kaleb Drew's disability, the District intentionally mistreated Kaleb by "brake checking" him and otherwise subjecting him to arbitrary terms and conditions while on District buses that the District knew would cause him to become agitated, angry, and violent and cause him to be denied benefits of the services, programs or activities of a public entity.

18.     Because of his disability, the District intentionally subjected Kaleb Drew to discrimination in that he was subjected to being "brake checked" while riding on the District's school busses to and from his home to L.I.F.E. Academy, while non-disabled students were not subjected to "brake checking" while riding on District school busses.

19.     The District's actions violate Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12132 et seq. ("ADA").

**COUNT III**
**42 U.S.C. § 1983- FOURTEENTH AMENDMENT**
**SUBSTANTIVE DUE PROCESS**

20.     Plaintiffs incorporate paragraphs 1 through 74 as if fully set forth herein.

21.     This claim is brought against the Knierim, Jones, and Burwell pursuant to 42 U.S.C. §1983.

22.     Kaleb has a fundamental liberty interest in his freedom of movement, bodily integrity and human dignity which is protected by the Fourteenth Amendment to the United States Constitution and has the right to be free of physical discomfort, fear, humiliation and physical harm.

23.     At all relevant times, Knierim, Jone, and Burwell acted under color of Illinois law.

24.     That Knierim's repeated and intentional acts of "break checking" Kaleb, restraining him and her cruel mistreatment of Kaleb deprived him of liberty interests and shocks the conscience.

25.     Jones and Burwell participated directly in depriving Kaleb of his due process rights by either failing to review video recordings from District buses that depicted Knierim's actions and recorded her threats to "brake check" Kaleb, or deliberately ignored the actions and statements of Knierim that were contained in the bus recordings.

26.     Jones and Burwell had actual knowledge of Knierim's actions and statements and failed to intervene, created a policy or custom under which the unconstitutional practices occurred, and/or allowed the continuance of such violations.

27.     Jones and Burwell were grossly negligent in supervising Knierim and/or exhibited deliberate indifference to Kaleb's rights by failing to act in the face of knowledge that unconstitutional acts were occurring.

28.     Knierim acted with the knowledge or consent of Jones and Burwell who condoned or acquiesced in Knierim's unconstitutional treatment of Kaleb.

29.     The Knierim, Jones, and Burwell violated Kaleb's clearly established constitutional and/or statutory rights of which they should reasonably have known.

## COUNT IV
## 42 U.S.C. § 1983- EQUAL PROTECTION

30.     Plaintiffs incorporate paragraphs 1 through 74 as if fully set forth herein.

31.     Knierim, Jones, and Burwell intentionally discriminated against Kaleb because of his disability.

15

32. Pursuant to policy or practice, because of his disability Kaleb was subjected to multiple instances of discrimination, that included "brake checking" and other terms and conditions that Kaleb was subjected to in order to be transported to and from the L.I.F.E. Academy by the District.

33. Nondisabled students were not subjected to "brake checking" or other arbitrary terms and conditions in order to ride District busses to and from District schools and Knierim Jones, and Burwell did not treat students without disabilities the same way they treated Kaleb.

34. Knierim, Jones, and Burwell, acting under color of Illinois law, deprived Kleb of equal protection under the law and discriminated against him because of his disability and their actions violated the equal protection clause of the Fourteenth Amendment.

## COUNT V
## 42 U.S.C. § 1983- EIGHTH AMENDMENT

35. Plaintiffs incorporate paragraphs 1 through 74 as if fully set forth herein.

36. The Eights Amendment to the United States Constitution guarantees Kaleb the right to be free from cruel and unusual punishment and excessive force from District employees.

37. On November 1, 2023, Knierim unlawfully "brake checked" Kaleb multiple times causing him to fall floor and hit a pole on the bus, and Knierim put her hands around Kaleb's neck and in doing so Knierim violated the Eighth Amendment prohibition against cruel and unusual punishment and excessive force.

38. That as a District employee, Knierim acted under the color of law, and Knierim's actions were extreme and outrageous in light of Kaleb's disability and were carried out with a malicious intent and/or a reckless disregard for Kaleb's rights, safety, and well-being.

39. When Knierim brake checked an autistic passenger on her bus, it was reasonably

16

foreseeable that Kaleb would sustain physical or emotional injuries as result of being brake checked.

40.    As a direct and proximate result of Knierim's violation of the Eighth Amendment to the Constitution, Kaleb has suffered harm and will continue to suffer damages.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41.    Plaintiffs incorporate paragraphs 1 through 74 as if fully set forth herein.

42.    That the actions of Knierim on November 1, 2023 toward Kaleb shock the conscience of any reasonable person.

43.    Knierim's conduct on November 1, 2023 was extreme and outrageous and goes beyond the bounds of decency in a civilized community.

44.    As a direct and proximate result of the conduct of Knierim, Kaleb has suffered and continues to suffer severe emotional distress and mental anguish.

## COUNT VII – NEGLIGENT INFLICTION OF
## EMOTIONAL DISTRESS

45.    Plaintiffs incorporate paragraphs 1 through 74 as if fully set forth herein.

46.    On the various days that Knierim transported Kaleb on District busses described herein, Knierim acted in a wanton, outrageous, and careless manner that was indifferent to the rights of Kaleb.

47.    As a result, Kaleb has suffered and continues to suffer severe emotional trauma and distress.

## COUNT VIII
## BATTERY

48.    Plaintiffs incorporate paragraphs 1 through 74 as if fully set forth herein.

49.    On November 1, 2023, Knierim caused harmful and/or offensive contact to Kaleb

by repeatedly brake checking him and causing him to fall to the floor of the bus and to hit a pole near the front of the bus.

50.     That the actions of Knierim in brake checking Kaleb with the intention that he fall or hit or strike an object in the bus constitute battery.

51.     As a direct and proximate result of Knierim's actions, Kaleb has suffered and continues to suffer damages.

## COUNT IX
## ASSAULT

52.     Plaintiffs incorporate paragraphs 1 through 74 as if fully set forth herein.

53.     On November 1, 2023, Knierim repeatedly threatened to brake check Kaleb or otherwise slam on the brakes of the bus and these threats were designed and intended to cause Kaleb to fear or apprehend immediate harmful and/or offensive contact.

54.     Knierim intended with these threats to create in Kaleb an immediate fear or apprehension of harmful or offensive conduct, and Kaleb felt such fear and apprehension because the result of these threats was to cause Kaleb to become more upset, agitated, angry, and volatile.

55.     As a direct and proximate result of Knierim's conduct, Kaleb has suffered and continues to suffer damages.

## COUNT X
## NEGLIGENCE

56.     Plaintiffs incorporate paragraphs 1 though 74 as if fully set forth herein.

57.     While he was a passenger on District school busses, the District and Knierim owed Kaleb the highest degree of care consistent with the operation of the District school buses.

58.     Further, the District owed Kaleb a duty to ensure that Knierim were properly trained and to be able to operate the District school bus used to transport students to and from

the L.I.F.E. Academy and to be able to address the needs of the disabled children that she was transporting.

59.    That the District breached its duty of care by failing to property train Knierim to be able to address the needs of the disabled children that she was charged with transporting on her bus.

60.    Knierim breached her duty of care to Kaleb by brake checking him multiple times while the bus was moving and Kaleb was standing up on the bus.

61.    The District is liable for Knierim's negligent acts because Knierim was employed by the District and performed the acts described herein within the scope of her employment.

62.    As a direct and proximate result of Knierim's negligence Kaleb has suffered and continues to suffer severe emotional distress and mental anguish.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment against the Defendants including but not limited to:

a.    Compensatory damages, including but not limited to damages for past and future emotional and mental anguish and medical, counseling, and related costs in excess of $300,000.00, or in an amount to be proved at trial;

b.    Punitive damages in an amount to be proved at trial;

c.    Costs incurred in pursuing this action, including reasonable attorney fees and the fees of Plaintiff's experts, if any;

d.    This Court retaining jurisdiction of this action to ensure full compliance by Defendants with the Court's judgment and decree; and

e.    All such other relief to which Plaintiffs may be entitled and which may be

just and proper in the premises.

PLAINTIFFS DEMAND A TRIAL BY JURY.


NICHELLE DREW, BRADLEY DREW, and KALEB
DREW, a Disabled Adult, by NICHELLE DREW and
BRADLEY DREW, Co-Guardians of KALEB DREW,
Plaintiffs

BY:    DODSON, PIRAINO & ASSOCIATES


BY:    /s/ Scott M. Dempsey
        Scott M. Dempsey


Prepared By:
Scott M. Dempsey
#6224775
DODSON, PIRAINO & ASSOCIATES
501 West University Avenue
Champaign, IL 61820
(217) 359-8200
scott@dpa-lawyers.com

20